UNITED STATES of America, Plaintiff,

v.

LUTHERAN MEDICAL CENTER—Richard H. Young Memorial Hospital, Defendant.

Civ. No. 79–0–531.

United States District Court, D. Nebraska.

Sept. 14, 1981.

10. *See* n.4, 5, *supra*.

Raphael O. Gomez, Dept. of Justice, Washington, D. C., for plaintiff.

Alex M. Clarke, Omaha, Neb., for defendant.

SCHATZ, District Judge.

In this action the plaintiff, United States of America (hereinafter United States or government), sued to recover a federal grant in the amount of $659,495, which was awarded to the defendant, Lutheran Medical Center (hereinafter Lutheran) to assist in the construction of a community mental health center (hereinafter CMHC). Lutheran received that grant in July of 1968 under provisions of the Community Mental Health Centers Act, 42 U.S.C.A. § 2681 *et seq.*, as in effect prior to July 29, 1975. The United States now seeks recoupment of its proportionate share of the value of Lutheran's CMHC pursuant to the statutory recovery formulae set out at 42 U.S.C.A. § 2695 of the original Act and 42 U.S.C.A. § 2689m of

the amended Act. The matter was submitted to the United States Magistrate on cross-motions for summary judgment. On February 26, 1981, the magistrate issued proposed findings and recommendations in which he recommended that an order be entered denying plaintiff's motion for partial summary judgment, granting defendant's motion for summary judgment, and dismissing plaintiff's complaint. In his findings, the magistrate ultimately concluded that the six-year limitations periods of 28 U.S.C.A. § 2415 apply to this action and that the government's causes of action, whether denominated as asserted in express contract or quasi-contract, or as recovery for diversion of funds paid under a grant program, were barred as untimely filed. Pursuant to 28 U.S.C.A. § 636(b)(1), the United States filed a motion to reject certain of the magistrate's proposed findings and recommendations. For the reasons which follow, this Court, while agreeing with the facts as found by the magistrate, must reject the magistrate's conclusions of law and recommendations for disposition.

In 1963, the Congress first enacted the Community Mental Health Centers Act (hereinafter CMHCA or the Act), which was subsequently amended in 1975 and in 1978. The Act authorized the Secretary of the Department of Health, Education and Welfare (now known as the Department of Health and Human Services) to award monetary grants for the construction, renovation and equipping of community mental health centers. Provision was made for allotment of funds to each state submitting a plan which met requirements to be established by regulation. From these allotments, grants could be made upon application to the Secretary submitted through the state agency. By the provisions of 42 U.S.C.A. § 2691(c), such a center was defined as follows:

> The term "community mental health center" means a facility providing services for the prevention or diagnosis of mental illness, or care and treatment of mentally ill patients, or rehabilitation of such persons, which services are provided princi-

pally for persons residing in a particular community or communities in or near which the facility is situated.

The underlying purpose of the Act was set forth in House Report No. 694, 1963, U.S. Cong. & Ad.News 1054, 1058 in the following terms:

It is planned that the community mental health centers will transfer the care of the mentally ill from state custodial institutions to community facilities and services provided at the community level for those who are physically ill.

Pursuant to authority granted in the Act, the Secretary promulgated regulations by which the furnishing of five essential services was required of a CMHC. In 42 C.F.R. § 54.212 (1975), those essential elements were stated to be: (1) inpatient services, (2) outpatient services, (3) partial hospitalization services, (4) emergency services on a twenty-four hour per day basis, and (5) consultation and education services available to community agencies and professional personnel. The geographic region in which a CMHC is required to make delivery of those services is known as a "catchment area."

The Act also provides that, if within twenty years after completion of construction, any grantee facility ceases to be a CMHC (as phrased in 42 U.S.C.A. § 2695 of the original Act) or is not used by a CMHC in the provision of comprehensive mental health services (as phrased in 42 U.S.C.A. § 2689m of the amended Act), and if the Secretary has not determined that there exists good cause for termination of the grantee facility's obligation, there is triggered a right to recovery by the United States in an amount to be computed from a formula specified in each of the above-designated statutory sections. While the United States and Lutheran have each urged a different conclusion as to whether the recoupment sought here is more properly grounded in the recovery section of the original Act, 42 U.S.C.A. § 2695, or in the amended recovery section codified as 42 U.S.C.A. § 2689m, this Court finds, as did the magistrate, "that the provisions of those two sections are substantially the same and reflect only a distinction without a difference which is without importance to resolution of the questions presented by the respective motions of the parties." It is important to note that the CMHCA contains no period of limitations.

As determined by the magistrate, the material facts herein are largely undisputed and are these. In 1968, Lutheran applied for and received payment of a federal grant in the amount of $659,495, which represented fifty per cent of the cost of constructing and equipping a CMHC facility as authorized by the Act. Construction of Lutheran's CMHC was completed by December 1, 1972, and the facility opened and initiated operations on January 1, 1973. As of a date no earlier than April 1, 1973, and no later than August 1, 1973, Lutheran's fully constructed facility ceased to exist and operate as a CMHC, Lutheran not having met the five essential service requirements to which it became obligated by reason of its acceptance of the grant. Twenty years have not elapsed since the completion of construction of Lutheran's CMHC facility. The Secretary of Health and Human Services has determined that good cause to release Lutheran from its obligations under the terms of the grant does not exist. Finally, insofar as is known, Lutheran has not repaid to the United States any part of the grant money awarded under the CMHCA.

The Court finds that the above-summarized operative facts, apparently not disputed by Lutheran, are sufficient to establish Lutheran's liability for repayment of the grant. Disagreement between the parties centers on the correctness of the magistrate's determination that the six-year limitations periods provided for in 28 U.S.C.A. § 2415 apply here to bar the government's action against Lutheran. Therefore, this Court must determine the time within which the United States must bring suit under the Community Mental Health Centers Act, for the recovery of federal funds used in the construction of a CMHC which, within twenty years after the completion of construction, ceases to exist and function as

a qualified CMHC. Any factual question as to whether the causes of action stated in the government's complaint accrued and became enforceable within six years of the October 18, 1979, filing date of the complaint need not be addressed. The Court's conclusion that, because this action involves neither recovery under any type of contract nor recovery of money diverted from a grant program, the six-year limitations periods set forth in 28 U.S.C.A. § 2415 have no application herein obviates the necessity for discussion of such question. The jurisdiction of this Court is properly invoked under 28 U.S.C.A. § 1345 and 28 U.S.C.A. § 1331.

 It is settled that Congress may create a cause of action without restricting the period of time within which such right of action may be asserted. *Occidental Life Ins. Co. v. EEOC*, 432 U.S. 355, 360, 367, 97 S.Ct. 2447, 2451, 2454, 53 L.Ed.2d 402 (1977); *United States v. City of Palm Beach Gardens*, 635 F.2d 337, 339 (5th Cir. 1981); *United States v. Sellers*, 487 F.2d 1268, 1269–70 (5th Cir. 1973). Unless Congress explicitly provides otherwise, the United States is not bound by any limitations period or subject to the defense of laches. *United States v. Summerlin*, 310 U.S. 414, 416, 60 S.Ct. 1019, 1020, 84 L.Ed. 1283 (1940); *Palm Beach Gardens, supra*, 635 F.2d at 339–40; *United States v. 93 Court Corp.*, 350 F.2d 386, 388 (2d Cir. 1965), *cert. denied*, 382 U.S. 984, 86 S.Ct. 560, 15 L.Ed.2d 473 (1966). As stated by the Supreme Court in *Guaranty Trust Co. v. United States*, 304 U.S. 126, 58 S.Ct. 785, 82 L.Ed. 1224 (1938):

> The rule quod nullum tempus occurrit regi—that the sovereign is exempt from the consequences of its laches, and from the operation of statutes of limitations— appears to be a vestigial survival of the prerogative of the Crown . . . (The source of its continuing vitality) "is to be found in the great public policy of preserving the public rights, revenues, and property from injury and loss, by the negligence of public officers." . . . (T)he rule is supportable now because its benefits and ad-

vantage extend to every citizen, including the defendant . . . .
> 304 U.S. at 132, 58 S.Ct. at 788, *quoting United States v. Hoar*, 26 F.Cas. 329 (C.C. D.Mass.1821).

There can be no disagreement with the proposition that the CMHCA grants the United States a cause of action for recovery of public funds, but specifies no limitations period. As the magistrate recognized, unless Lutheran can show that Congress intended one of its independent, general statutes of limitations to apply to suits under the Act, there would be no prescribed period of time at which this action would be barred.

The magistrate accepted Lutheran's argument that the six-year limitations periods of 28 U.S.C.A. § 2415 should apply to the claim asserted in the government's complaint. That statute provides in pertinent part:

> (a) Subject to the provisions of Section 2416 of this title, and except as otherwise provided by Congress, every action for money damages brought by the United States or an officer or agency thereof which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues . . . .
> (b) Subject to the provisions of Section 2416 of this title, and except as otherwise provided by Congress, . . . an action to recover for diversion of money paid under a grant program . . . may be brought within six years after the right of action accrues . . . .

In arriving at his conclusion as to the applicability of 28 U.S.C.A. § 2415 limitations to the present case, the magistrate relied on *United States v. City of Palm Beach Gardens*, 466 F.Supp. 1155 (S.D.Fla. 1979), a suit brought by the United States for recoupment of a $400,000 federal grant awarded under the Hill-Burton Act for construction of a non-profit, publicly-owned hospital which was subsequently sold to a private corporation. The Hill-Burton Act, 42 U.S.C.A. § 291i, provides that the federal

government may sue to recover a share of the value of the hospital if, within twenty years after the completion of construction, either of two events occur: (1) the hospital is sold or transferred to a profit-making organization; or (2) the facility ceases to be a public or other non-profit hospital. The district court in *Palm Beach Gardens* characterized the government's action as a suit to recover for a diversion of money paid under a federal grant program and held that it was time-barred by the six-year statute of limitations prescribed by 28 U.S.C.A. § 2415(b). The Fifth Circuit Court of Appeals subsequently reversed the judgment of the trial court dismissing the government's action, and remanded the cause for appropriate proceedings, *United States v. City of Palm Beach Gardens*, 635 F.2d 337 (5th Cir. 1981), *rehearing denied*, 647 F.2d 1123 (5th Cir. 1981).[1]

Although *Palm Beach Gardens* was decided under a statutory enactment other than the CMHCA, the issues and factual circumstances presented in that case are strikingly analogous to the situation at bar. Indeed, the two cannot be distinguished in a meaningful way. This Court, therefore, views the appellate court's reasoning and legal conclusions in *Palm Beach Gardens* to be highly persuasive, if not determinative, in resolving the question as to the applicability of 28 U.S.C.A. § 2415 limitations to a suit brought under the recovery section of the CMHCA.

In *Palm Beach Gardens*, after determining that the government's suit did not rest upon contract or involve recovery of funds diverted from a grant program, the Court of Appeals squarely held that the statutes of limitations set forth in 28 U.S.C.A. §§ 2415(a) and (b) have no application to an action brought under the Hill-Burton Act, 42 U.S.C.A. § 291i. The Court concluded that Congress intended to allow the United States to seek recovery of federal grant money at any time after the sale of a Hill-Burton hospital to a for-profit organization.

As the magistrate found herein, the recovery provision of the Hill-Burton Act, 42 U.S.C.A. § 291i, construed in *Palm Beach Gardens*, is virtually identical to 42 U.S.C.A. § 2695 and 42 U.S.C.A. § 2689m, the recovery provisions relied upon in the instant action. All three statutes contemplate recovery by the government of a share of the current value of the facility receiving public funds if, within the specified twenty-year period, the facility either is transferred to an unapproved entity or ceases to be used for the purposes intended by the grant.

Lutheran argues that the government's cause of action under the CMHCA is barred by 28 U.S.C.A. § 2415(b), which governs any suit to recover money diverted from a grant program. Application of Section 2415(b) limitations must, however, be rejected because this case does not involve the diversion of actual construction funds paid under the CMHC program. The present award of funds was made to Lutheran under the CMHCA, 42 U.S.C.A. § 2681, as in effect prior to July 29, 1975, which authorized "grants for construction of public and other nonprofit community mental health centers." Lutheran properly used the money paid under the grant program for the construction of its CMHC, just as the defendant in *Palm Beach Gardens* properly employed the federal funds it received to construct a Hill-Burton hospital. Lutheran's CMHC was completed and initiated the delivery of public mental health services as of January 1, 1973, but subsequently ceased to operate as a qualified CMHC. To paraphrase the Court of Appeals in *Palm Beach Gardens*, the CMHC program permits such cessation of operations, though it also allows the federal government to seek reimbursement. *See* 635 F.2d at 340. The United States here does not allege any improper diversion of construction money provided under the Act, but is rather pursuing the statutory right of recovery provided when a fully constructed CMHC ceases to function

1. Unfortunately, the magistrate did not have the benefit of the Court of Appeals' opinion in *Palm Beach Gardens* at the time he prepared his findings and recommendations in the instant case.

within the twenty-year period following completion of construction. 28 U.S.C.A. § 2415(b) is, therefore, inapplicable.

Lutheran argues in the alternative that this action sounds in quasi-contract and should be barred by 28 U.S.C.A. § 2415(a), which imposes a six-year statute of limitations on every suit for money damages by the United States which is "founded upon any contract express or implied in law or fact." Because Lutheran has abandoned any claim that the government's action is based on express contract and the Court does not view this suit as resting upon any variety of implied contract, application of 28 U.S.C.A. § 2415(a) must be rejected. Lutheran asserts the existence of a quasi-contract under which it received the federal grant on the condition that Lutheran maintain and operate its facility as a CMHC. Lutheran argues that when it failed to so apply the funds, the condition attached to the grant failed, the implied contract between the parties was breached, and Lutheran was thereby unjustly enriched at the government's expense.

■ Admittedly, quasi-contractual obligations may arise even in conjunction with a statutory right of recovery. *Palm Beach Gardens, supra*, 635 F.2d at 340; *United States v. Limbs*, 524 F.2d 799, 801 (9th Cir. 1975). But a statutory right of action may properly be characterized as quasi-contractual only if it is a legal obligation which is enforced "... by compelling the obligor to restore the value of that by which he was unjustly enriched." *Limbs, supra*, 524 F.2d at 801. In the absence of unjust enrichment, quasi-contractual obligations do not arise and "there can be no recovery based upon an implied contract." *Palm Beach Gardens, supra*, 635 F.2d at 341.

The Court of Appeals in *Palm Beach Gardens* rejected application of the six-year limitations period of 28 U.S.C.A. § 2415(a) to the government's statutory claim for reimbursement, stating: "The City was under no obligation to maintain its hospital as a non-profit facility" and "... the City was under no obligation to turn over money to the federal government upon the sale of its

hospital to a profit-making organization." 635 F.2d at 341. Similarly, in the present case Lutheran was not contractually or statutorily required to maintain and operate its facility as a CMHC. Like the recipient of federal grant funds in *Palm Beach Gardens*, Lutheran was under no obligation to reimburse the federal government if Lutheran ceased to operate its facility as a CMHC. The United States neither alleges nor proceeds under a theory of unjust enrichment herein. The CMHCA merely gives the government the option of seeking recovery of a portion of the value of Lutheran's mental health facility if such facility ceases to exist and operate as a CMHC within twenty years following the completion of construction.

■ The claim of the United States in this case is not contractual, but distinctly statutory. *Palm Beach Gardens, supra*, 635 F.2d at 340. Since neither the grant agreement between the parties nor the Act mandated that Lutheran maintain its facility as a CMHC, Lutheran was not unjustly enriched by failing to do so and no obligation sounding in quasi-contract to repay the government arose. The Court, therefore, finds that this action is not founded upon an implied contract so as to fall within the purview of 28 U.S.C.A. § 2415(a).

In sum, the government's claim for recoupment under the applicable provision of the CMHCA, for recovery of a share of the value of the facility Lutheran constructed with federal grant funds, appears to fall well within the parameters staked out by the Court of Appeals in *Palm Beach Gardens*. There being no limitations period contained in the Community Mental Health Centers Act and no independent statute of limitations which applies, it must be concluded "that Congress intended to allow the United States to seek recovery under the Act at any time." *Palm Beach Gardens, supra*, 635 F.2d at 341. The Court holds that the six-year limitations periods set forth in 28 U.S.C.A. §§ 2415(a) and (b) have no application to this action.

Considering that the government's action is not time-barred and the undisputed facts

sufficiently establish Lutheran's liability for repayment under the CMHCA, the Court finds that there is herein no genuine dispute as to any material fact and that the United States is entitled to partial summary judgment as a matter of law. The magistrate's proposed findings and recommendations must be rejected to the extent they are inconsistent with the views expressed herein.

A separate order granting plaintiff's motion for a partial summary judgment (Filing No. 8), denying defendant's motion for summary judgment (Filing No. 9), and scheduling further progression of the case will be entered contemporaneously with this memorandum opinion.